UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TRAVIS J. MARBURGER, ET AL** | : | **DOCKET NO. 15-cv-2354** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **AXIALL CORPORATION, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand filed by Travis J. Marburger and Desra J. Marburger ("plaintiffs"). Doc. 6. The motion is opposed by defendants. For the following reasons, the motion is DENIED.

### I.
### BACKGROUND

Plaintiffs filed suit in state court against Axiall Corporation ("Axiall"), Georgia Gulf Corporation ("Georgia Gulf"), Georgia Gulf Lake Charles, LLC ("Georgia Gulf LC"), Eagle US 2, LLC ("Eagle"), Sun, LLC ("Sun") and Turner Industries Group, LLC ("Turner"). Doc. 1, att. 1. Plaintiffs seek to recover damages for an alleged brine spill originating from pipelines owned and operated by Eagle which they claim contaminated their property.[1]

Eagle removed the case on the basis of diversity jurisdiction. It alleges that the amount in controversy exceeds $75,000 and that plaintiffs, who are citizens of Louisiana, are completely

---

[1] This suit is related to *Boudreaux, et al v. Axiall, et al,* No. 14-2283 (U.S. Dist Ct. W.D. La.) and *Lyons, et al v. Axiall, et al,* No. 15-1674 (U.S. Dist Ct. W.D. La.). Since *Boudreaux* was the first case removed to this court and the issues are identical in all cases, the parties agreed that briefing and discovery deadlines set in *Boudreaux* would apply to all three cases. Further, the memoranda filed in support and opposing the pending motion were primarily filed in the *Boudreaux* case. For this reason, we sometimes reference documents in the related *Boudreaux* case as "*Boudreaux,* Doc. __ ."

-1-

diverse from defendants Axiall, Georgia Gulf, Georgia Gulf LC, and Eagle.[2] They further allege that defendants Sun and Turner ("the nondiverse defendants") who are citizens of Louisiana were improperly joined to defeat diversity jurisdiction. Doc. 1. Sun and Turner are companies that contracted with Eagle to perform work in the brine field.

Plaintiffs filed a motion to remand claiming that removal was improper because they have alleged valid claims against the nondiverse defendants and the removing defendants have failed to carry their burden of showing improper joinder. Plaintiffs concede that the amount in controversy is met. Doc. 6.

The removing defendants filed an opposition to the remand and plaintiffs subsequently sought an extension of time to reply and requested jurisdictional discovery. *Boudreaux,* Docs. 25, 26. The unopposed motion to conduct jurisdictional discovery was granted on October 7, 2014. *Boudreaux,* Doc. 28. The court allowed discovery "related to the claims against the in-state defendants." *Id.* After a year of discovery, plaintiffs filed a supplemental memorandum in support of their motion to remand on November 1, 2015. *Boudreaux,* Doc. 64. Plaintiffs again argue that they have plead sufficient facts for relief against the nondiverse defendants Sun and Turner and that defendants have failed to meet their burden of showing that they were improperly joined.

In their supplemental memorandum in opposition to remand, the removing defendants argue that plaintiffs have failed to state a cause of action against the nondiverse defendants and that the evidence unveiled during jurisdictional discovery in no way shows that plaintiffs can recover against either Sun or Turner.

---

[2] Axiall is a Delaware corporation with its principal place of business in Georgia. Eagle and Georgia Gulf LC are Delaware limited liability companies with their principal place of business in Georgia. The sole member of Eagle is Eagle Spinco, Inc. a Delaware corporation with its principal place of business in Georgia. The sole member of Georgia Gulf LC is Axiall Holdco, Inc., a Delaware corporation with its principal place of business in Georgia. Doc. 1, p. 4.

A hearing was held on the motion on February 18, 2016 and the parties were allowed to submit post-hearing memoranda. *Boudreaux,* Doc. 78. After consideration of the arguments of counsel and review of the extensive briefing in this matter, the courts finds as follows.

## II.
### LAW AND ANALYSIS

If removal is based on a claim that a nondiverse party has been improperly joined, then the removing party must establish either "(1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non[]diverse party in state court." *Davidson v. Georgia Pacific,* 819 F.3d 758, 765 (5th Cir. 2016)(citing *Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 401 (5th Cir. 2013)). Only the latter method is relevant here, insofar as the removing defendants did not allege actual fraud in the pleading of jurisdictional facts. Thus, the relevant question is "whether the defendant[s] ha[ve] demonstrated that there is no possibility of recovery by the plaintiff[s] against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff[s] might be able to recover against an in-state defendant." *Id.* (citing *Smallwood v. Ill. Cent. R.R.Co.*, 385 F.3d 568, 573 (5th Cir 2004)). "[T]here must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

When determining whether a nondiverse defendant was improperly joined, the court must first look at the allegations contained in the complaint and determine if plaintiffs can survive a Rule 12(b)(6) challenge for failure to state a claim. *Davidson,* 819 F.3d at 765. If the allegations in the complaint satisfy 12(b)(6) but the complaint either misstates or omits "discrete facts that

would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (quoting *Smallwood,* 385 F.3d at 573). The trial court is vested with the discretion to determine whether or not piercing the pleadings is necessary. *Id.*

The burden of persuasion on a party asserting improper joinder is a "heavy one." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009)(citing *Campbell v. Stone Ins., Inc.,* 509 F.3d 665, 669 (5th Cir. 2007)). All unchallenged factual allegations are evaluated in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in the plaintiff's favor. *Davidson,* 819 F.3d at 765.

While we find that plaintiffs' allegations in their complaint against Sun and Turner do sufficiently state a claim for relief and would otherwise survive a 12(b)(6) challenge, we nonetheless determine that there are misstatements or omissions in the pleadings which require us to look at the evidence adduced during the yearlong jurisdictional discovery process in order for this court to predict whether plaintiffs have a reasonable basis for recovery against Sun and/or Turner.

In their supplemental brief submitted following jurisdictional discovery, plaintiffs argue that Sun and/or Turner owed a tort-based duty to plaintiffs and were negligent in their performance of the inspection, maintenance, and repair of the brine pipelines at issue in this litigation. Relying extensively on the case of *Thompson v. Winn-Dixie Montgomery, Inc.,* 181 So.3d 656 (La.10/14/15), plaintiffs maintain that a subcontractor such as Sun or Turner is not relieved of its duty of care under Louisiana Civil Code Article 2315 to properly perform their duties under the contract.

In *Winn-Dixie* the Louisiana Supreme Court found that the merchant, Winn-Dixie, owed a statutory duty to the plaintiff who slipped and fell in a puddle of water. The court also found that the subcontractor cleaning service who removed a mat from in front of the meat case and created the wet puddle owed a separate duty to the plaintiff under article 2315. The court reversed the finding of the appellate court which overturned the jury verdict assessing a percentage of fault on the subcontractor. The appellate court determined that the merchant was statutorily liable for the accident and could not delegate its statutorily imposed duties by contracting with third parties. In reversing, the supreme court stated that "nothing in the [merchant liability] statute precludes the application of comparative fault laws to third parties who may have contributed to a plaintiff's injuries." *Id.* at 663. The supreme court also looked at the appellate court's finding that Winn Dixie's exercise of operational control over the subcontractor precluded a finding of any negligence on the part of the contractor. The supreme court examined the maintenance agreement between the parties and noted that a provision in the agreement made the subcontractor responsible for the control and supervision of its employees while performing their duties. The court reversed the finding of operational control based on this provision. *Id.* at 666.

Here plaintiffs maintain that despite their contract with defendants, Sun and Turner owed a similar duty under article 2315 to plaintiffs to "perform their work of inspecting, maintaining, and repairing the brine pipeline on or near the property in such a way as to not cause damage to [the plaintiffs'] property." *Boudreaux,* Doc. 64, p. 14.

Plaintiffs contend that the deposition testimony of Cody Bourgeois, a former employee of Sun and Turner, demonstrates the contractors were negligent in the performance of their duties. Thus, they contend that a jury could find them responsible for a portion of fault. They also argue that his deposition testimony casts doubt on whether or not defendants actually maintained

operational control over the contractors, an argument espoused by Eagle in support of improper joinder.  In sum, plaintiffs contend that defendants have failed to carry their burden of showing that there is no possibility of recovery against Sun and/or Turner.

In response, defendants assert that plaintiffs are attempting to hold Sun and Turner liable for services and contractual obligations that they owed to Eagle.  They maintain that any tort duty plaintiffs claim is owed to them arises from the terms of the contracts Sun and Turner had with Eagle.  Citing the case of *McClendon v T.L. James & Co.* 231 F.2d 802 (5th Cir. 1956), defendants maintain that for Sun and Turner to owe any duty to plaintiffs it must be independent and separate from any duty created by the contract.

In *McClendon,* plaintiffs were injured in an accident on a highway and brought suit against the contractor who had an agreement with the Louisiana Highway Department to patch, widen, and repair that section of highway.  *Id.* at 803.  Plaintiff alleged the contractor was negligent for failure to warn and repair.  *Id.* at 804.  The court found that the contractor could not be held liable to the plaintiff stating, "[i]f it had a duty to mark the defect, warn against it, temporarily repair it or build up the shoulder for a suitable by-pass, the duty came alone from the contract.  But nonperformance (nonfeasance) of such a contract duty owing by the agent to his principle under a contract does not give rise to tort liability against that agent, and, of course, the agent has no contract liability to a third party not in privity." *Id.*  The court further stated that "[w]here the duty springs from the contract, it is a creature of it, it affords no basis for tort liability." *Id.*

Defendants argue that the testimony of plaintiffs' witness Cody Broussard does not show that the contractors performed their work negligently or that they were delegated any responsibility whatsoever.  They argue that the evidence adduced does not show that either Sun or Turner committed any substandard conduct that caused plaintiffs' alleged property damage.  In contrast,

defendants point to affidavits and testimony from employees of Turner and Eagle who they submit show that they exercised complete operational control over the brine pipelines and Sun and Turner only followed defendants' directives and instructions.

In their response brief, Plaintiffs argue, in the alternative, that defendants have not met their burden of showing that they cannot recover as third party beneficiaries to the contracts between defendants (or their predecessor PPG) and Sun. Plaintiffs argue that they are third party beneficiaries to the Maintenance Agreement by way of a "Right of Way Agreement between Allied Chemical and PPG dated Dec. 22, 1965" which they attach as an exhibit to their response. *Boudreaux,* Doc. 71, att. 1, p. 32. Defendants object to the introduction of this new argument and exhibit by way of a reply memorandum and assert that the document relied on by plaintiffs is inapplicable as the agreement fails to state that PPG undertook any responsibility toward the plaintiffs or any landowners. Defendants also assert that the contract fails to manifest a clear intention to provide a benefit to third party plaintiffs.

### A. *Did Sun and Turner owe a duty to plaintiffs separate and apart from any duty owed to defendants under the contracts?*

First we consider the rulings in the two cases most prominently relied on by each party to this dispute. In *McClendon,* the court found that plaintiffs could not base their claims for negligence on the theory of a duty owed to them under the contract. However, the *McClendon* court also stated, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *McClendon,* 231 F.2d at 804. This, in essence, is what the plaintiffs here are arguing by way of the *Winn-Dixie* case. Plaintiffs assert that despite the contractual duties Sun and Turner owed to defendants, they owed a separate tort-based duty to the plaintiffs to perform their work in such a way as to not cause damage to the plaintiffs' property.

These cases are not at odds and we agree with plaintiffs that Louisiana Civil Code article 2315 can impose a separate and distinct duty owed by Sun and Turner. However, after examining the evidence, we find that defendants have met their burden of showing that there is no reasonable basis for this court to predict that plaintiffs would recover against Sun and/or Turner even under a duty imposed by article 2315.

The evidence submitted establishes that defendants intended to exercise complete operational control over Sun and Turner. Under Louisiana law, while a principal is typically not liable for negligent acts committed by its contractor while performing its duties under the contract, an exception exists if the principal reserves the right to supervise or control the work. *Roberts v. Cardinal Services, Inc.* 266 F. 3d 368, 380 (5th Cir. 2001). The affidavits of Steve Tam[3] and Jesse Casey[4] state that neither Sun nor Turner made any operational decisions regarding the brine field, never made any decisions as to what to do when repairing brine pipeline leaks or preventing leaks from occurring, performed work on the pipelines only pursuant to authorization by Eagle, and that Eagle did not delegate any duty or responsibility to either Sun or Turner. *Boudreaux,* Doc. 1, att. 2, Doc. 65, att. 3.

Plaintiffs offer the testimony of Cody Bourgeois[5] who they submit calls into question these broad assertions made by defendants. Plaintiffs assert that Mr. Bourgeois' testimony shows that (1) either Sun or Turner was responsible for "failed welds" that caused the brine leaks; (2) either Sun or Turner made decisions regarding whether to remove the contaminated dirt after a brine leak event; and (3) Eagle did not exercise operational control over Sun or Turner. Thus, they contend

---

[3] Steve Tam is employed by Eagle as manufacturing team leader for the brine field. He was previously employed by PPG in the same capacity. *Boudreaux,* Doc. 1, att. 2.
[4] Jessie Casey is employed by Eagle as the brine field superintendent. *Boudreaux,* Doc. 65, att. 3.
[5] Cody Bourgeois was a pipefitter who was employed by Sun and Turner. *Boudreaux,* Doc. 10, att. 2, p. 4.

that there is a reasonable possibility that they can recover against either Sun or Turner for their negligence.

In his deposition, Mr. Bourgeois testified that half of the leaks in the brine pipeline were from "failed welds." *Boudreaux,* Doc. 10, att. 2, p. 15.  The significance of this is that Sun or Turner would have been responsible for the "failed welds" as opposed to "fabrication welds" which were original construction.  *Boudreaux,* Doc. 65, att. 3, p. 3.  Initially, he answered that some of these "failed welds" were found in "Bourgeois 1" or "Bourgeois 3" (the "Geographic Zone"[6]). However when he was later asked if the "failed welds" were in the Geographic Zone he replied, "No, not that I recall."  *Id.*  Additionally, when questioned about the brine leaks Mr. Bourgeois repaired he stated that the leaks were not from a weld previously done by either Sun or Turner.  *Id.* at p. 11.  We find Mr. Bourgeois' testimony equivocal at best.

Defendants offer the affidavit of Jessie Casey, the brine field superintendent employed by Eagle, which explains that according to Eagle's regularly kept records the brine leaks in the Geographic Zone during the relevant period occurred in the original pipeline fabrication welds, not "failed welds" which could have been performed by Sun or Turner.  *Boudreaux,* Doc. 65, att. 3, p. 3.

Plaintiffs also offer the testimony of Mr. Bourgeois in order to show that Sun or Turner made the decision whether to remove the contaminated dirt or whether to leave it at the site of the brine spill.  Initially, Mr. Bourgeois stated that "Randy [Turner's supervisor] would make that call."  *Boudreaux,* Doc. 10, att. 2, p. 10.  He was later asked, "based on his experience" was Sun or Turner responsible for determining whether the soil was replaced or not, and Mr. Bourgeois replied, "Yes, sir."  *Id.* at p. 13.  But immediately following this he stated, "Yes, sir, but I do not

---

[6] The Geographic Zone has been defined as the boundaries of the property relevant to this lawsuit.

know for certain if that is the way you've got to do it. But to my knowledge, that's how I'd assume it would be." *Id.* Mr. Bourgeois admitted, later in his deposition that he did not know if the instructions on how to handle the soil came from Axiall (Eagle) or not. *Id.* at 21.

In contrast to Mr. Bourgeois' testimony, the affidavit of Randy Broussard, who was a supervisor in the brine field for both Sun and Turner, provides that Sun and Turner "were required to follow Eagle's specification, standards, policies, and procedures for services and work performed on Eagle's brine pipelines in the Geographic Zone, including the Brine Line Spill Management, Lockout, and Hot Work Procedures." *Boudreaux,* Doc. 65, att. 9, p. 2. The deposition testimony of Steve Tam, Eagle's manufacturing team leader for the brine fields, confirms that Eagle made the decision to remove and dispose of affected soil following a brine leak. *Boudreaux,* Doc. 9, att. 1, p. 46. The affidavit of Jessie Casey, brine field superintendent, notes that "whenever impacted soil was used a temporary backfill in response to a leak event, the decision to use impacted soil was made by Eagle, not by any contractor personnel." *Boudreaux,* Doc. 65, att. 3. p. 3.

In support of their argument that Eagle did not exercise operational control, plaintiffs offer Mr. Bourgeois' testimony wherein he stated that Sun and Turner – not Eagle – instructed him on how to perform a weld. *Boudreaux,* Doc. 10, att. 2, pp. 6-7. Plaintiffs also refer to Mr. Bourgeois' prior testimony when he stated that Randy, an employee of Turner, determined whether or not to replace the contaminated soil. Additionally, plaintiffs rely on the testimony of Steve Tam who stated that Eagle relied on their contractors to do the daily inspection for pipeline leaks and that Sun and Turner would let Eagle know when a leak occurred. *Boudreaux,* Doc. 9, att. 1, pp. 32, 33.

The affidavits of Steve Tam and Jessie Casey, offered by defendants, both unequivocally state that Eagle made all decisions regarding the pipelines, Eagle never delegated any decision-making authority to either Sun or Turner regarding brine leaks or how to repair or prevent pipeline leaks, and that Sun and Turner were required to follow Eagle's policies and procedures for services performed in the brine field. *Boudreaux,* Doc. 1, att. 2, pp. 1-4, Doc. 65, att. 3, pp. 1-6. Mr. Casey explains that Sun and Turner were contracted to walk or drive the right of way and look for visual evidence of potential leaks. Eagle would confirm the leaks and would determine the necessary repair and response. Sun and Turner employees would be used to respond to a confirmed leak and were required to follow Eagle's directions in responding to the leak. *Boudreaux,* Doc. 65, att. 3, p. 2.

Considering all the evidence submitted, the court finds that defendants have met their burden of showing that there is no possibility of recovery against the nondiverse defendants Sun and Turner. We find that defendants have shown that Eagle, not Sun or Turner, was responsible for all operations in the brine field. The testimony of Mr. Bourgeois does not convince us otherwise. Further, the court finds no evidence of any specific substandard conduct committed on the part of either Sun or Turner that was a legal cause of plaintiffs' alleged damages. In reaching this decision the court takes into consideration the extended period of time the court allowed plaintiffs to conduct discovery. *See Davidson,* 819 F.3d at 767 ("The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non[]diverse defendant.")(quoting *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 334 (5th Cir. 2004)). Plaintiffs had more than a year to develop any claims they may have against Sun or Turner yet the one witness' testimony they rely on is unpersuasive.

### B. *Are plaintiffs third party beneficiaries to the contracts?*

Plaintiffs argue that they are third party beneficiaries to the contract between Eagle (or its predecessor PPG) and Sun. They assert that in the Maintenance Services Agreement dated March 9, 2012 Sun agreed to perform its services in a workmanlike manner and to protect "adjacent property from loss or damage which might result, either directly or indirectly, from the activities of [Sun] or any other party performing any part of the Services at the Facility." *Boudreaux,* Doc. 74, att. 7, p. 2. Plaintiffs assert that this language must be interpreted as providing a stipulation *pour autrui* in favor of the plaintiffs for damage to their property.

In response to this argument, defendants first assert that plaintiffs are attempting to introduce a new argument and a new exhibit[7] by way of a reply brief which is not permissible. Defendants also argue that plaintiffs, who are not mentioned anywhere in the maintenance agreement, cannot show that it is manifestly clear that the parties intended plaintiffs benefit from the contract.

While we agree with defendants that a response brief is not the proper avenue to raise a new argument, we nonetheless consider the argument and determine that it lacks merit. It is clear that plaintiffs are not a party to the contract between PPG and Sun. Therefore, in order for plaintiffs to avail themselves of a benefit under the contract, they must be third party beneficiaries to the contract. In Louisiana a contracting party may stipulate a benefit for a third person which is known as a stipulation *pour autrui.* La. Civ.Code art. 1978, *Joseph v. Hospital Service dist. No. 2 of Parish of St. Mary,* 939 So.2d 1206, 1211 (La.2006). A stipulation *pour autrui* only exists if the following are met: "1) the stipulation for the third party is manifestly clear; 2) there is certainty as

---

[7] Plaintiffs assert for the first time in their response brief that a Right of Way Agreement between Allied Chemical Corporation and PPG dated December 22, 1965 (which they attach as an exhibit) obligates Eagle, as the successor to PPG, for damages caused to plaintiffs land during the construction and operation of the pipeline.

to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Id.* at 1212. The Louisiana Supreme Court found that the first element was "[t]he most basic requirement of a stipulation *pour autrui*" and "absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof." *Id.*

We have examined the maintenance agreement executed between PPG and Sun. *Boudreaux,* Doc. 4, pp. 1-29. The portion of the agreement which plaintiffs rely on is included in Section 4.3 and is entitled "Safety." The paragraph reads in its entirety as follows:

> Supplier [Sun] shall continuously maintain adequate protection of its work and equipment from damage and shall protect the Facility [PPG Industries] from injury or loss of any type whatsoever arising out of or in connection with the Services. Supplier [Sun] also shall adequately protect adjacent property from loss or damage with might result, either directly or indirectly, from the activities of Supplier [Sun] or any other party performing any part of the Services at the facility.

*Id.* at p. 9. Contrary to plaintiffs' argument, we do not find that this language evidences a manifest intent to provide a benefit to the plaintiffs. In both cases cited by plaintiffs, *Andrepont v. Acadia Drilling Co.,* 231 So.2d 347 (La. 1969) and *Hazelwood Farms, Inc. v. Liberty Oil and Gas Corp.,* 790 So.2d 93 (La. 2001) the court found that the mineral lease contained a stipulation *pour autiui* in favor of the plaintiffs who claimed property damage as a result of oil and gas operations. The provision in the lease in both cases was almost identical and stated that the lessee "shall be *responsible for all damages* caused by lessee's operation." *Andrepont,* 231 So.2d at 348, (emphasis added). In those cases the court found that the language was broad enough to encompass a cause of action by a third party for damages occurring on their property.

Here, the provision in the agreement that plaintiffs rely on is quite different. Sun did not assume responsibility for damages resulting from work performed under the contract. The

provision does not discuss damages in any manner. The paragraph states that Sun "shall adequately protect adjacent property." We find that this language simply describes Sun's duty to protect the Facility and adjacent property from injury or loss. Clearly, this is a duty that Sun owes to PPG (Eagle). It in no way establishes a stipulation for third party property owners to benefit from the contract. *But see e.g., Waste Commanders, LLC v. BFI Waste Services, LLC*, 2015 WL 1089320 (W.D. La. Mar. 2, 2015)(Where the court found that Waste Commanders, a solid waste hauler, had a cause of action under a contract between the Police Jury and BFI based on the provision in the contract which stated that "[BFI] warrants that its rate structure will treat all haulers equally" when depositing waste in the landfill. Waste Commanders claimed it was being charged a higher rate than other haulers to deposit waste in a landfill and claimed BFI was in violation of the contract. The court found the quoted language in the contract manifested a clear intention to benefit third party haulers such as Waste Commanders.) Since we find that there is no clear intent for the contract between Sun and PPG to provide a benefit to third parties, this argument must fail.

### III.
#### CONCLUSION

For the reasons stated herein, it is **RECOMMENDED** that plaintiffs' Motion to Remand [doc.6] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Sun, LLC, and Turner Industries Group, LLC be **DISMISSED** as improperly joined parties.

Under the provisions of 28 U.S.C. §636 and Fed.R.Civ.Proc. 72, parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE this 15 August 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE